Approved: _____
STEVEN J. KOCHEVAR
Assistant United States Attorney

Before:     THE HONORABLE PAUL E. DAVISON
            United States Magistrate Judge
            Southern District of New York

21-MJ-11873

- - - - - - - - - - - - - - - - - - X
                                     :   **COMPLAINT**
UNITED STATES OF AMERICA             :
                                     :   Violation of 18 U.S.C.
    - v. -                           :   §§ 371, 924(c), and 2,
                                     :   and 21 U.S.C. §§ 841
JACQUES JEAN, and                    :   and 846
a/k/a "Jay Jean,"                    :
a/k/a "Felix Mitchell,"              :
LOURDES IVETTE PAZO,                 :   COUNTY OF OFFENSE:
                                     :   WESTCHESTER
                Defendants.          :
                                     :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ROBERT LOMBARDI, being duly sworn, deposes and says that he is a Task Force Officer the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

(Conspiracy to Distribute Fentanyl)

        1.      In or about December 2021, in the Southern District of New York and elsewhere, JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

        2.      It was a part and an object of the conspiracy that JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, conspired to distribute and possess with the intent to distribute was forty grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

## COUNT TWO

(Possession of a Controlled Substance with Intent to Distribute)

4. On or about December 9, 2021, in the Southern District of New York and elsewhere, JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, intentionally and knowingly did possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5. The controlled substance involved in the offense was forty grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); Title 18, United States Code, Section 2.)

## COUNT THREE

(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

6. In or about December 2021, in the Southern District of New York and elsewhere, JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, during and in relation to drug trafficking crimes for which they may be prosecuted in a court of the United States, namely, the conspiracy with intent to distribute a controlled substance charged in Count One of this Complaint and the possession with intent to distribute a controlled substance charged in Count Two of this Complaint, knowingly did use and carry a firearm, and in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying and possession of a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

## COUNT FOUR

(Conspiracy to Commit Unlicensed Firearms Dealing)

7.   From in or about October 2021 until in or about December 2021, in the Southern District of New York and elsewhere, JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, and agree together and with each other to commit an offense against the United States, to wit, the unlicensed dealing of firearms, in violation of 18 U.S.C. 922(a)(1)(A).

8.   It was part and an object of the conspiracy that JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, who are not licensed importers, licensed manufacturers, or licensed dealers of firearms, and others known and unknown, willfully engaged in the business of dealing in firearms and in the course of such business did ship and transport a firearm in interstate commerce.

### Overt Acts

9.   In furtherance of the conspiracy, and to effect the illegal objects thereof, the following acts, among others, were committed in the Southern District of New York and elsewhere:

a. JEAN arranged the sale of a Taurus G2S 9 mm pistol bearing serial number TLU69202 and directed the transportation of that same firearms from Connecticut to Port Chester, New York.

b. PAZO transported a Taurus G2S 9 mm pistol bearing serial number TLU69202 from Connecticut to New York and sold the same firearm in Port Chester, New York.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

10.   I am an Investigator with the New York State Police and a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"). I have been employed by the New York State Police since 2003 and have been an Investigator since 2017

and a TFO since 2018.  During that time, I have participated in numerous narcotics and firearms investigations. I base this affidavit on that personal experience, my participation in this investigation, my conversations with other law enforcement officers, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation.  Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11.    Based on my personal involvement in this investigation, my review of law enforcement reports, and my discussions with other law enforcement officers, including an undercover officer working with the New York State Police ("UC-1"), I have learned, among other things, the following:

   a. On or about May 26, 2021, in Port Chester, New York, UC-1 purchased from JACQUES JEAN, the defendant, identified to UC-1 as "Jay Jean," a clear plastic corner tie containing a white powdery substance sold as cocaine and that field-tested positive for cocaine.

   b. On or about July 27, 2021, in Port Chester, New York, UC-1 purchased from JEAN, identified to UC-1 as "Jay Jean," a clear plastic corner tie containing a tan chunky substance sold as fentanyl and that field-tested positive for fentanyl.

   c. On or about July 29, 2021, in Port Chester, New York, UC-1 purchased from JEAN, identified to UC-1 as "Jay Jean," a clear plastic corner tie containing a tan chunky substance sold as fentanyl and that field-tested positive for fentanyl.

   d. On or about August 5, 2021, in Port Chester, New York, UC-1 purchased from JEAN, identified to UC-1 as "Jay Jean," a clear plastic corner tie containing a tan chunky substance sold as fentanyl and that field-tested positive for fentanyl.

   e. On or about September 2, 2021, in Port Chester, New York, UC-1 purchased from JEAN, identified to UC-1 as "Jay Jean," a clear plastic corner tie containing a white powdery substance sold as fentanyl and that field-tested positive for fentanyl.

f. On or about October 31, 2021, UC-1 contacted JEAN to purchase a handgun. JEAN directed UC-1 to JEAN's residence in Milford, CT ("Address-1"). After arriving at that location, UC-1 contacted JEAN again to advise him of UC-1's arrival. JEAN directed UC-1 to a parking spot near a dumpster near Address-1. JEAN then entered the front passenger seat of UC-1's vehicle and handed UC-1 a green Glock-style 9mm semi-automatic handgun without identifying serial numbers. In return, UC-1 paid JEAN $1,400 in United States currency.

g. On or about November 18, 2021, UC-1 contacted JEAN to purchase two handguns and a quantity of fentanyl. JEAN directed UC-1 to JEAN's residence at Address-1. After arriving at that location, UC-1 contacted JEAN again to advise him of UC-1's arrival. JEAN again directed UC-1 to a parking spot near a dumpster near Address-1. JEAN then entered the front passenger seat of UC-1's vehicle carrying a brown paper bag. JEAN opened the brown paper bag and took out a white T-shirt. The white T-shirt contained a blue towel, a green Glock-style 9mm semi-automatic handgun without identifying serial numbers, a black Glock-style 9mm semi-automatic handgun without identifying serial numbers, and a clear plastic corner tie containing another clear plastic corner tie containing a tan powdery substance sold as fentanyl. The substance field-tested positive for fentanyl. In return, UC-1 paid JEAN $5,600 in United States currency.

h. On or about November 26, 2021, UC-1 contacted JEAN to purchase a quantity of fentanyl. JEAN directed UC-1 to JEAN's residence at Address-1. After arriving at that location, UC-1 contacted JEAN again to advise him of UC-1's arrival. JEAN again directed UC-1 to park near a vehicle near Address-1. JEAN then exited the other vehicle and entered the front passenger seat of UC-1's vehicle. JEAN handed UC-1 a clear plastic corner tie containing an off-white chunky substance sold as fentanyl. The substance field-tested positive for fentanyl. In return, UC-1 paid JEAN $3,200 in United States currency.

12. Based on my participation in this investigation, I know that on or about December 9, 2021, UC-1 contacted JACQUES JEAN, the defendant, to arrange the purchase of a quantity of fentanyl and two firearms in Port Chester, New York. JEAN informed UC-1, in substance and in part, that he would send a female to deliver the fentanyl and firearms to UC-1 in Port Chester. JEAN later informed UC-1, in substance and in part,

5

that JEAN could only sell UC-1 a single firearm.  UC-1 exchanged text messages with JEAN[1] as shown in the following images:



---

[1] JACQUES JEAN, the defendant, is identified as "Felix Mitchell" in UC-1's phone because JEAN contacted UC-1 using an encrypted instant messaging application.  JEAN invited UC-1 to join the instant messaging application using a phone number that the UC-1 knew JEAN to use (the "Phone Number").  Based on communications from other law enforcement agents, I have learned that T-Mobile is the service provider for the Phone Number, and the subscriber for the Phone Number is "Jacques Jean."

6



13.     Based on my conversations with UC-1, I understand the following concerning the text messages shown above:

    a. When JACQUES JEAN, the defendant, stated "And I got you with the other as well", he was referring to the fentanyl he intended to sell to UC-1 along with the firearm shown above.

7

b. When JEAN stated "Like last time", he was referring to the fact that he had sold fentanyl to UC-1 during their most recent prior transaction.

c. When JEAN stated "Bro take of her I bro trust you" and "She said she coming to see you Thursday and she ready when you are", he was referring to LOURDES IVETTE PAZO, the defendant, travelling to Port Chester, New York, to deliver the fentanyl and firearm to UC-1.

14. Based on my participation in this investigation and my conversations with law enforcement officers, including UC-1, I know the following:

d. On or about December 9, 2021, UC-1 met LOURDES IVETTE PAZO, the defendant, at or about the parking lot of a retail store in Port Chester, New York, located at or about 150 Midland Avenue, Port Chester, New York.

e. In the parking lot, PAZO exited the vehicle she arrived in and gave UC-1 a plastic Wal-Mart bag containing (i) a substance in a blue plastic bag in a clear plastic bag that weighed approximately 62.2 grams, including packaging, was sold as 50 grams of fentanyl and field-tested positive for fentanyl and (ii) a Taurus G2S 9 mm pistol bearing serial number TLU69202 (the "Firearm"). In exchange, UC-1 gave PAZO $4,800 in United States currency. While PAZO counted the currency in the presence of UC-1, UC-1 removed the Firearm from the bag that PAZO had handed him and examined the Firearm in PAZO's view. JACQUES JEAN, the defendant, monitored the transaction between UC-1 and PAZO through a video call with UC-1. PAZO then exited UC-1's vehicle and departed from 150 Midland Avenue, Port Chester, New York in the vehicle she had arrived in.

f. Shortly after she departed from 150 Midland Avenue, Port Chester, New York, law enforcement agents stopped PAZO and arrested her. Following her arrest and after waiving her *Miranda* rights, PAZO agreed to speak with law enforcement agents. PAZO told law enforcement, in substance and in part, that prior to meeting UC-1, she had gone to JACQUES JEAN's residence at Address-1 in Milford, Connecticut and that JEAN had given her the Wal-Mart bag to give to UC-1. She then traveled from Milford, Connecticut, to Port Chester, New York to meet UC-1. Despite JEAN's text message to UC-1 that PAZO was ready to make the delivery when UC-1 was ready, and the fact that UC-1 examined the Firearm in front of PAZO, PAZO claimed to law enforcement, in sum and substance, that she did not know that

the bag she had handed to UC-1 contained narcotics or a firearm, that she did not see UC-1 take the firearm out of the bag, and that she thought the firearm UC-1 had been holding might be fake.

15. Based on my participation in this investigation and my conversations with law enforcement officers, including UC-1, I know the following:

   a. On or about December 9, 2021, law enforcement agents executed a search warrant at JEAN's residence located at Address-1. During execution of the warrant, law enforcement agents observed two small bags and a glove containing approximately 22 grams in total of a substance that field-tested positive for heroin, numerous empty packages, a sifter, and empty glassine envelopes. Based on my training and experience, I believe that the possession of narcotics and drug paraphernalia such as packaging materials, specifically numerous empty glassine envelopes near other empty packaging, are consistent with drug trafficking. Law enforcement agents also recovered sixteen rounds of ammunition from JEAN's residence, specifically 11 rounds of .380 ammunition and 5 rounds of 9 mm ammunition, and an empty .45 caliber magazine. Immediately thereafter, law enforcement agents arrested JEAN.

16. Based on my review of law enforcement and court records and conversations with law enforcement officers, I know that on or about January 31, 2019, JACQUES JEAN, the defendant, pleaded guilty in the United Stated District Court for the District of Connecticut to one count of possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), a felony punishable by up to twenty year's imprisonment. On or about October 8, 2020, JEAN was sentenced to four years of probation.

17. The Firearm is marked "Made in Brazil." Based on my training and experience, I know that this marking indicates that the Firearm was not manufactured in New York state.

18.     Based on my communications with law enforcement officers with the Bureau of Alcohol, Tobacco, Firearms and Explosives, I know that a review of law enforcement databases shows that JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, are not licensed importers of firearms, licensed dealers of firearms, or licensed manufacturers of firearms.

WHEREFORE, the deponent respectfully requests that JACQUES JEAN and LOURDES IVETTE PAZO, the defendants, be imprisoned or bailed, as the case may be.

TASK FORCE OFFICER ROBERT LOMBARDI
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
10th day of December, 2021

THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK