**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
299 BROADWAY
SUITE 1700
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
175 MAIN STREET
SUITE 800
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (914) 761-0995

March 16, 2023

Honorable Cathy Seibel
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, NY 10601

BY HAND AND EMAIL/PDF

Re:    *United States v. Lourdes Ivette Pazo*, 22 Cr. 117 (CS)
       **Defense Sentencing Letter**

Dear Judge Seibel:

I submit this sentencing letter on behalf of Lourdes Pazo, who is scheduled to be sentenced by this Court on Friday, March 31, 2023 at 4:00 pm for her plea of guilty to the lesser included charge to Count One of the Indictment, to 21 USC §841(b)(1)(C), possession with intent to distribute a quantity of fentanyl. For the mitigating factors set forth herein, which include the defendant's personal history; numerous letters of support from family and friends, employers and colleagues; her attaining a professional license and other certifications; successful completion of substance abuse treatment and ongoing mental health counseling; full-time employment; and total compliance with pretrial release conditions throughout the pendency of this case, I respectfully request that the Court impose a below Guidelines Range sentence of time served to be followed by 3 years' Supervised Release. Such sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a).

**Factual and Case Background, Plea Agreement and Probation PSR**

Defendant Lourdes Pazo began a friendship through correspondence in 2013 with codefendant Jacquez Jean while Jean was incarcerated for federal narcotics trafficking. The relationship continued after Jean's eventual release from prison, which was conditioned on electronic monitoring with a daily curfew at 6:00 pm. Jean was unemployed and was also

1

responsible for a baby so Lourdes would help Jean financially when he asked, as much as she was able. The relationship became sporadically romantic over the years and text messages and other correspondence between them confirm that from at least July, 2021 through until the date of the defendant's arrest, their relationship was romantic.

On various dates from May through December, 2021, an undercover law enforcement officer, working jointly with New York State Police and FBI, engaged in multiple purchases of cocaine and fentanyl as well as firearms from Jean, in Port Chester, New York.  On or about December 8, 2021, the undercover officer contacted Jean to purchase fentanyl and two firearms from him. Jean instructed the undercover officer that instead of meeting him himself that he would send a female to deliver the drugs and guns. Jean subsequently informed the undercover officer that he could only obtain one gun to sell him and sent a text photo of the gun. Jean then called Lourdes at approximately 6:30 pm and asked her if she could do him a favor and come by his house to drop off a bag with a friend at 9:30 pm. "You would give him something and he would give you something". She did not ask him any questions about it but speculated that Jean could not go himself because of the curfew as it was after 6:00 pm, and that it must have been important because he had never asked her to do anything like that for him before. She agreed to help him and he gave her his address. She arrived at Jean's residence at approximately 8:45 pm and he told her to come to the doorway because he could not step outside due to his ankle monitor. She came to the doorway and while holding his baby, Jean gave her a Walmart bag and gave her the meeting location which was in the vicinity of a Home Depot in Port Chester where she would exchange the bag for "something". Because she was early, she decided to kill time by shopping at a nearby Kohl's. Discovery disclosed by the Government revealed that as the time for the meeting drew closer, text messages followed by Facetime calls, confirm that Jean contacted Lourdes repeatedly directing her to the meeting location in Port Chester and to specifically where to park her car.  Jean texted her that she would be meeting a guy driving up in a "blue Honda with dark tints" and to "jump in" that car when he arrived, assuring her that "he cool ppls". Lourdes responded by text stating "Ok, I'm trusting you…".  Jean finally instructed her to "make sure the money is rite".  She entered the blue Honda as directed, gave the bag to the undercover officer who was on facetime with Jean to monitor the events. Lourdes observed the undercover officer in possession of a firearm and accepted $4,800 U.S. currency from him. She exited the vehicle, got back into her car to drive home when she was pulled over and arrested by law enforcement, which was recorded by bodycam video.

On December 9, 2021, the defendant made her initial appearance before the Honorable Paul E. Davison on a Criminal Complaint (ECF Doc No. 1). After a bond hearing was held, the Court granted pretrial release conditions including a $100,000 personal recognizance bond cosigned by two financially responsible people and secured by $1,700 cash and/or property; home detention enforced by electronic monitoring, substance abuse and mental health testing and treatment and other conditions (ECF Doc No. 3). She was released on these conditions the next day, on December 10, 2021. On March 4, 2022, the defendant was arraigned before the Honorable Andrew E. Krause on in a six-count Indictment (ECF Doc No. 18), with participating in a narcotics conspiracy and related firearm offenses. On June 27, 2022, due to conflict, I was appointed to represent the defendant.  On August 2, 2022, with no objection from Pretrial Services and no position from the Government, the Court granted my defense motion to remove the home confinement with electronic monitoring conditions due to Lourdes's full compliance

2

with all conditions of release including negative drug tests, full time employment frequently in excess of 16 hours per day and her vocational achievements in nursing (ECF Doc No. 30).

After plea negotiations with the Government, the parties were able to reach a pretrial resolution by Plea Agreement dated August 29, 2022. On September 2, 2022, the defendant appeared before Your Honor and entered a plea of guilty, pursuant to the lesser included charge to Count One of the Indictment[1], to 21 USC §841(b)(1)(C), possession with intent to distribute a quantity of fentanyl. The parties stipulated to a Base Offense Level of 24, based upon the drug weight with a two-point enhancement because she possessed a firearm. A three-level reduction for acceptance of responsibility calculated to a Total Offense Level of 23. At Criminal History Category I, since this is the defendant's first arrest, the Guidelines Range calculates to 46-57 months' imprisonment.



The Final Probation PSR ("PSR") dated January 9, 2023 agrees with Plea Agreement Guidelines Range calculation of 46-57 months' imprisonment and recommends a below Guidelines Range sentence of time served to be followed by 3 years' Supervised Release with special condition of 150 hours[2] of community service (PSR, Addendum, pp. 25-27). I wholeheartedly agree with Probation's recommended sentence of time served with 3 years' Supervised Release which is greatly supported by the applicable 18 USC §3553(a) factors. However, I do dispute for the reasons detailed herein that the Probation recommended special condition of community service is either necessary or justified for the goals of "repay[ment] to the community", "strengthen[ing] ties to the community" and "establish[ing] positive new relationships" (PSR, Addendum, p.27).



Therefore, for the purpose of brevity, I will not repeat defendant background details but focus on how the applicable 18 USC §3553(a) factors greatly support a sentence of time served as requested by the defense and recommended by Probation, in part.

---

[1] Count Two of the Indictment charged the defendant with possession with intent to distribute 40 grams and more of substances containing fentanyl, pursuant to 21 USC §841(b)(1)(B).

[2] Probation's recommendation of "150 months" of community service stated in the PSR Addendum on page 25 is clearly a typographical error. As confirmed in the narrative portion on page 27, it was meant to read as recommending "150 hours". I ask that this error be corrected at sentencing.

## Sentencing Considerations

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." Id. As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). That appropriate sentence may be outside the guidelines range as long as the "justification is sufficiently compelling to support the degree of the variance." *Gall*, at 50.  I submit that the defense requested sentence of time served (21 months' imprisonment) is justified under the totality of circumstances.

*United States v. Booker*, 543 US 220 (2005), held that the Court has the duty to consider the recommended guideline range along with the other factors listed in 18 USC §3553(a).  It is therefore respectfully requested that the Court consider, along with the United States Sentencing  Guidelines:

The nature and circumstances of the offense and the history and characteristics of the defendant.

a)      The nature and circumstances of the offense

The nature and underlying facts of this case are undoubtedly serious. Lourdes assisted codefendant Jean, a prior felon on federal probation, in selling fentanyl and a gun. She was fortunate that the sale took place to an undercover officer and not to someone who could use this contraband to cause harm to others. The Court is well-aware of the scourge that illegal narcotics is having on communities, especially fentanyl, which is responsible for many deaths, sometimes after unwitting ingestion. The proliferation of illegal firearms has certainly led to thousands of shootings across the nation resulting in countless injuries and death.  However, it is clear that Lourdes, ████████████████████████████████████████████████████████████████ was ripe to be used by Jean. He could not make the sale himself because of his curfew, enforced by electronic monitor he was wearing. Jean therefore called on Lourdes, his dependable friend and intermittent romantic partner, to help him because he knew she wouldn't ask any questions and it wouldn't cost him anything to have her do it. Indeed, she didn't ask any questions and viewed his request as just a favor. She didn't ask for anything in return. He had never asked her to do this before and figured that it was important to him and that he couldn't deliver the bag himself because of his curfew. She met him at the doorway of his residence. While holding his infant child he gave Lourdes a Walmart bag.  Even when it became obvious that she was committing a crime after she entered the undercover officer's car, she continued with the sale. ████████████ ████████████████████████████████████████████████

4



b)      The history and characteristics of the defendant.

This factor greatly supports the defense requested sentence of time served. As the attached character letters from family, friends (Ex. B) and employer (Ex. C) all attest, Lourdes is a person worthy of the Court taking a chance and showing significant leniency. Her professional achievements (Ex. D) since the pendency of this case, devotion to her family and friends, self-improvement through mental health counseling and her profound remorse for her actions merit a time served sentence. She has led completely drug-free life since the pendency of this case ▮ ████████████████████████████████████████████████ he is employed full time for Village Crest Health and Rehabilitation Center in New Milford Connecticut, frequently working over 16 hours per day. Gilberto Valentin, Director of Human Resources for Village Crest details in his letter to the Court dated March 14, 2023, Lourdes's accomplishments since being hired and her tremendous value to the company:

> "Ms. Pazo was hired back on April 4th, 2022, as a receptionist. Since hired Ms. Pazo has shown leadership, great work ethic and team spirit. So much so that we invested in her schooling, and advancement here at the facility for her passion in helping the elderly. Ms. Pazo passed all required classes and state testing to become a certified C.N.A. Ms. Pazo is one of few who work tirelessly doubles to help with the onset staffing shortage. She was recently given a customer service award at our annual employee appreciation dinner. And now is serving as one of four only Mentors, for new hires. As the Director of this facility, *I can't put into words how important Ms. Paso's role is here. How much her residents adore her look for her and the impact she has done in the short amount of time employed with us.* We are already in talks with Ms. Pazo on next steps to further her career. In investing in her schooling again now in a nurse's role and helping her with her LPN license. Ms. Pazo is the true definition of a hard-working single mother. I'm very cautious on giving any letters of importance or of character but when Ms. Pazo had asked me if I could make a recommendation letter for her, with no hesitation I said yes, I hope this serves as a small glimpse of how we adore Ms. Pazo here and how we will continue to support her. (Ex. C at 1) (Emphasis added).

Indeed, during the pendency of this case, Lourdes took and passed her exam to become a Certified Nurse's Aide (Ex. D). As for her Mentor duties for new hires with the company, Lourdes informed me that she was invited to attend a training lunch on March 31, 2023 which she will unfortunately be unable attend due to conflict with the date of sentence in the instant case. (Ex. C at 2).

The numerous letters from family, friends and children she hashelped all attest to the selfless, kind and giving person that she is. They all discuss some way she helped them:

providing shelter in her own home to families after they were evicted for financial reasons; or to homeless individuals; cooking food for those in distress; assisting those with childcare issues so they could go to work; and tutoring kids in math. (Ex. B). She was previously certified by the State of Connecticut to be a foster parent and until recently was a foster mother ███████ ████████████████████████████████████████████████████

Notably, some of the letters discuss that Lourdes is a vulnerable person who is easily taken advantage of. They all attest to the kind of person she is and the strides she has made in her life over the last year. They all know that she will work hard, provide for her family and be an example to others in leading a law-abiding life.

Lourdes has acknowledged and accepts full responsibility for her actions. She understands that what she did in this case places her, her family and loved ones in a terrible position. She has written a heartfelt statement that she wishes to address to the Court at sentencing to express her remorse and discuss the impact this case has had on her, her family and loved ones.

I can attest that in my time representing Lourdes that I have always been impressed with her cooperation and respect for me and my efforts on her behalf. In all of our meetings after my appointment to this case, she expressed to me her deep remorse and shame for her conduct and her desire to continue to learn from this experience in order to better herself so that she can be there for her children, family and job. She hopes the Court will grant leniency and allow her to continue her career, provide for her children and be an example to them in leading a productive and law-abiding life.

2.      The need for the sentence imposed.  18 U.S.C. § 3553(a)(2).
        a)      To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        b)      To afford adequate deterrence to criminal conduct and protection for the public.

The defense requested sentence of time served, would be sufficient to promote respect for the law and provide just punishment. Again, although participating in the sale of fentanyl and a gun is extremely serious, this case represents Lourdes's first arrest at 36 years old. Used by the codefendant to enrich himself, Lourdes merely wanted to help him and was certainly not motivated by money for gain or to fund a substance abuse habit; and neither sought nor received any compensation. There is no reason other than a strictly punitive one, to sentence Ms. Pazo to jail time. While a jail sentence would certainly "reflect the seriousness of the offense", it would not "provide just punishment". It would remove Lourdes from a full-time job where she is greatly valued by her company and where she is excelling, take her from her children and prevent her continued and successful mental health and substance abuse treatment. A jail sentence would unnecessarily destroy everything Lourdes has accomplished in the last 15 months and constitute an unnecessary waste of taxpayers' money for the cost to incarcerate her at a rate of $44,258.00 per year (PSR at ¶120) The goal of "promoting respect for the law" is not advanced by a jail sentence that ignores the defendant's great progress, reformation and rehabilitation.

7

The defendant has been enormously embarrassed and is ashamed of her conduct. She will be forever burdened with albatross of a permanent federal felony criminal record. She is deathly afraid of being sentenced to a term of prison. Specific deterrence in this case is frankly axiomatic. Of course, Lourdes is keenly aware that any further violation of the law or of conditions of Supervised Release will result in prison time. I submit that Lourdes is extremely unlikely to re-offend and that the Probation Officer that is assigned to supervise her will have the easiest job in the office.

Finally, in addressing Probation's request for a special condition of 150 hours of community service, I submit that it is unnecessary and unjustified. Lourdes more that "repays" the community through her aforementioned services to others that are documented in the letters of support (Ex. B). Service to the community is already part of her, so community service is not necessary to "strengthen her community ties". Establishing "new positive relationships" is best dealt with by her continued mental health treatment, not community service. █████████ ███████████████████████████████████████████████████████████████ ████████████ Finally, mandating community service would be unduly harsh because of her work schedule which has her frequently working in excess of 16 hours per day.

## CONCLUSION

In sum, the defense requested sentence of time served followed by 3 years of Supervised Release, would demonstrate leniency, yet also fulfill the goals pursuant to 18 U.S.C. § 3553(a): (1) promotion of respect for the law by imposing a term of imprisonment sufficient to demonstrate condemnation of the defendant's actions; (2) provide adequate deterrence to the defendant and others from future similar conduct; (3) protection for the public and (4) afford the opportunity for reformation and rehabilitation. All of the goals of sentencing would be accomplished, sufficient but not greater than necessary, in order to achieve the aforementioned purposes.

Very truly yours,

Tanner & Ortega, L.L.P.

Howard E. Tanner

cc:    AUSA Steven Kochever (By ECF and Email/PDF)

8